446

LILLIAN KILPATRICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37233.   Filed May 28, 1954.

*James P. Hill, Esq.*, and *William R. Frazier, Esq.*, for the petitioner.
*Hugh F. Culverhouse, Esq.*, for the respondent.

450

OPINION.

## I.

OPPER, *Judge:* Petitioner's motions made at the hearing to strike one exhibit and all reference in the transcript relating to the nolo contendere pleas of petitioner and one of her witnesses and their subsequent convictions thereon for income tax evasion for the years 1943, 1944, and 1945 were then taken under advisement. Two distinct questions are involved: (1) Whether the evidence as to their convictions is admissible and respondent's cross-examination proper for purposes of impeaching the testimony of petitioner and Clyda Sutherland[1] as witnesses; (2) whether the record of petitioner's conviction is admissible to prove her alleged fraudulent intent for the years 1942 and 1943.

---

[1] In the cross-examination of Clyda Sutherland, respondent brought out that she too had been convicted upon a plea of nolo contendere of filing false and fraudulent returns for 1943, 1944, and 1945. Whether petitioner's motion covered this testimony is not altogether clear, but the parties have so treated it.

We think the questioning and the exhibit were properly used by respondent to attack the veracity of petitioner and Clyda Sutherland. The Tax Court is bound by "the rules of evidence applicable in the courts of the District of Columbia in the type of proceedings which prior to September 16, 1938, were within the jurisdiction of the courts of equity of said District." Sec. 1111, I. R. C. The District of Columbia Code, enacted on March 3, 1901, provides:

No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or by evidence aliunde; and the party cross-examining him shall not be concluded by his answers as to such matters. In order to prove such conviction of crime it shall not be necessary to produce the whole record of the proceedings containing such conviction, but the certificate, under seal, of the clerk of the court wherein such proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient. [D. C. Code 1951, sec. 14–305.]

As stated in *Bostic* v. *United States*, (C. A., D. C.) 94 F. 2d 636, certiorari denied 303 U. S. 635:

The test provided by Congress is clear and certain. Any person who has been convicted of a crime * * * may have that fact given in evidence against him to affect his credit as a witness.

See also *Goode* v. *United States*, (C. A., D. C.) 149 F. 2d 377.

The term "conviction" used in the District of Columbia statute includes convictions based on nolo contendere pleas as well as those based on jury verdicts or pleas of guilty. See *Pfotzer* v. *Aqua Systems*, (C. A. 2) 162 F. 2d 779; *United States* v. *Dasher*, (E. D., Pa.) 51 F. Supp. 805; *Haley* v. *Brady*, 17 Wash. 2d 775, 137 P. 2d 505; *State* v. *Herlihy*, 102 Me. 310, 66 Atl. 643. Contra, *Olszewski* v. *Goldberg*, 223 Mass. 27, 111 N. E. 404. In the quotation from 22 Corpus Juris Secundum, pages 658, 659, set out in petitioner's brief, the following appears relating to the plea of nolo contendere:

When accepted by the court, it becomes an implied confession of guilt, and, for the purposes of the case only, equivalent to a plea of guilty; and, *when judgment has been entered on the plea, the record is competent evidence of the fact of conviction.* * * * [Emphasis added.]

Petitioner also quotes a statement from *Berlin* v. *United States*, (C. A. 3) 14 F. 2d 497, reading in part:

The plea of nolo contendere has the same effect as a plea of guilty in the trial of a criminal case. * * *

Only Massachusetts appears to follow the rule relied on by petitioner.[2] All the other cases cited are distinguishable, most of them

---

[2] * * * On the other hand in a number of jurisdictions it has been held that a conviction on such a plea [nolo contendere] is as competent to impeach a witness as one entered on a plea of guilty or on a verdict. * * * The only relevant question is what are the limitations

either on the ground that there was apparently proof of a plea only, not a conviction, *Collins* v. *Benson*, 81 N. H. 10, 120 Atl. 724; see also *State* v. *Conway*, 20 R. I. 270, 38 Atl. 656, or that the holding dealt with the admissibility of the plea as an admission of facts in a civil action to which the accused was a party, e. g., *Twin Ports Oil Co.* v. *Pure Oil Co.*, (D. C., Minn.) 26 F. Supp. 366, affd. (C. A. 8) 119 F. 2d 747, certiorari denied 314 U. S. 644; *United States* v. *Plymouth Coupe*, (W. D., Pa.) 88 F. Supp. 93, reversed on other grounds (C. A. 3) 182 F. 2d 180; *Commonwealth* v. *Warner*, 156 Pa. Super. 465, 40 A. 2d 886, or in some cases both. In Connecticut the comparable statute appears to have been construed to exclude a misdemeanor from the category of "crimes," *Drazen* v. *New Haven Taxicab Co.*, 95 Conn. 500, 111 Atl. 861; so that subsequently a misdemeanor conviction on a plea of nolo contendere was, on the authority of the *Drazen* case, *supra*, held inadmissible to affect the plaintiff's credibility. *Krowka* v. *Colt Patent Fire Arm Mfg. Co.*, 125 Conn. 705, 8 A. 2d 5.

We deny petitioner's motions and admit the court record of the convictions. We think they are admissible [3] for impeachment purposes as would be any conviction of a crime committed by any witness, and that they may be noted as part of the background of the present case. We refrain from deciding, for reasons which will presently appear, whether it is permissible to consider petitioner's plea as evidence on the fraud issue. See 4 Wigmore on Evidence (3d ed.) sec. 1066, and cases cited in footnote 4; cf. *Cohen* v. *Commissioner*, (C. A. 10) 176 F. 2d 394.

## II.

In 1942 petitioner wrote checks amounting to $6,404.15 for the repayment of loans made to Clyda and Velma Sutherland and for the purchase of real estate, insurance policies, and Investors Syndicate contracts in their names. In 1943 petitioner entered into a partnership agreement with Clyda and Velma Sutherland by which the Sutherlands received a 50 per cent partnership interest. Petitioner claims that $6,404.15 and $45,427.08, the latter being one-half the adjusted book value of her sole proprietorship as of December 31, 1942, were

---

which the law assures the accused that he will be entitled to invoke if he files the plea. That is a mere question of what the courts have decided—one alternative is no more rational than the other—and, so far as we can see, the greater number of jurisdictions allow the conviction as evidence to impeach a witness. Where there is a doubt as to the competency of evidence, Federal Rules of Civil Procedure, rule 43 (a), 28 U. S. C. A. following section 723c, admonishes us to admit it rather than to exclude it; and for that reason we think it should have been here admitted. * * * [L. Hand, J., in *Pfotzer* v. *Aqua Systems*, *supra*.]

[3] Petitioner states in her brief: "Moreover, we feel that if the Court should permit the respondent to cross-examine in connection with the convictions on the theory that said inquiry is permissible as affecting credibility, then the Court may as well admit the pleas and convictions as admissions for all purposes in this proceeding."

paid as and constituted reasonable compensation in 1942 and 1943, respectively, for past services rendered by the Sutherlands.

While petitioner is not related to the Sutherlands she shared an apartment and was in close business association with them during 6 or 7 years prior to the period in question. Apart from the question of reasonableness, the 1942 payments were not necessarily payment for services, see *Spang-Chalfant & Co.*, 9 B. T. A. 858, and the alleged assignment in 1943 of one-half the business, for all that appears, was inspired by a desire to have the Sutherlands possess a proprietary interest and share the responsibilities of the business. See *Norman G. Nicolson*, 13 T. C. 690. Petitioner did not take these deductions on her returns and at least one of the recipients failed to report any of these amounts as income.

To show that these amounts were nevertheless intended as compensation, petitioner relies almost exclusively upon her own testimony and that of her present partner, Clyda Sutherland. The credibility of both petitioner and Clyda Sutherland, however, is open to serious question, not only by reason of their proven convictions, but for numerous other reasons. Both concealed the existence of bonds and out-of-state bank accounts. Both lied under oath to respondent's agents regarding these funds.[4] Their testimony in this proceeding not only conflicted with sworn statements made in the past,[5] but was misleading and evasive.[6]

---

[4] Petitioner testified under oath before respondent's agents as follows:

Q. Please state the name of each bank in which an account was maintained during the years 1942 to 1947, inclusive, either by you as an individual or by the partnership of "Lillian Kilpatrick's."
A. Commercial Bank at Panama-City, checking account; and Capitol City Bank in Tallahassee, a savings account.

\* \* \* \* \* \* \*

Q. Miss Kilpatrick, this investigation has disclosed information tending to indicate that there is at least one active bank account which you have not disclosed to the agents of the Bureau of Internal Revenue. Is that information correct or incorrect?
A. That's incorrect.
Q. Do you deny that there is a checking account in the name of "Lillian Kilpatrick's" in the Chase National Bank of the City of New York, Pennsylvania Branch, on which checks may be signed by you, by Velma Sutherland, or by Clyda Sutherland?
A. Do I have to answer that?
Q. You may decline to answer if you wish. Do you decline to answer?
A. Yes, sir.
Q. Do you have any statement that you wish to make at this time?
A. I'd like just a little time—about an hour.

\* \* \* \* \* \* \*

Q. Are you now ready and willing to answer the question as to whether or not there is a checking account in the name of "Lillian Kilpatrick's" in the Chase National Bank of the City of New York, Pennsylvania Branch. on which checks may be signed by you, by Velma Sutherland, or by Clyda Sutherland?
A. Yes, there is such a bank account.

[5] On January 18, 1949, petitioner testified under oath before respondent's agents as follows:

Q. Did you advise or instruct Velma and Clyda Sutherland not to disclose to the agents the existence of this account in the Chase National Bank?
A. Yes, sir.

At the hearing before the Tax Court petitioner testified as follows:

We do not regard the testimony of petitioner and her present partner as sufficiently trustworthy to carry petitioner's burden of proving that the amounts in question were intended in 1942 and 1943 as compensation, or that the present claim is other than a perfunctory afterthought. See *Max Cohen*, 9 T. C. 1156, 1165, affd. (C. A. 10) 176 F. 2d 394. Without some such evidence, the burden has not been met, and the deficiencies must be sustained, without considering the doubtful question of reasonableness.

## III.

For reasons which we discuss under the following issue, the defense of the statute of limitations would not be available as to either year, even had the issue not been implicity abandoned by petitioner.

## IV.

Our ultimate finding that part of the deficiencies for each of the years was due to fraud disposes of the fourth issue. Petitioner's understatement of gross income admitted in these proceedings to have been in amounts in excess of $56,000 and $36,000 for the two years, see *Frank A. Weinstein*, 33 B. T. A. 105, the unsatisfactorily explained disappearance of petitioner's records, see *Louis Halle*, 7 T. C. 245, affd. (C. A. 2) 175 F. 2d 500, certiorari denied 338 U. S. 949, and her deliberate concealment of funds and intentional falsification under oath, see *Maroosis v. Smyth*, (C. A. 9) 187 F. 2d 228, 233, certiorari denied 342 U. S. 814; *Victor A. Dorsey*, 33 B. T. A. 295, 300, are inconsistent with innocence. This is so even though we are giving no consideration to petitioner's prior conviction on this issue. As we said in *M. Rea Gano*, 19 B. T. A. 518, 533:

Q. * * * Is it not a fact that you directed Clyda and Velma Sutherland not to disclose the existence of this bank account in the Chase City National Bank to anyone?
A. I did not.
[6] Clyda Sutherland testified at the hearing as follows:
Q. Have you ever been adjudged guilty of committing a felony?
A. In what do you mean by that, sir?
Q. At any time during your life have you ever been adjudged by a Court to be guilty of committing a felony?
A. What is a felony?
Q. Well, a felony is an offense against the laws of the state, a criminal offense?
A. I have never been in any court except this one.
　　*　　　*　　　*　　　*　　　*　　　*　　　*
THE COURT: * * * I must say I don't understand the answer to one of the questions of the witness' answer that she had never been in any other court except this one. Now, did she mean this room or—
THE WITNESS: I'm talking about this room, sir.
　　*　　　*　　　*　　　*　　　*　　　*　　　*
Q. Is it not a fact that you were adjudged guilty of evading or attempting to evade your income taxes due and owed for the years 1943, '44 and '45?
A. That is true.

A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose.

Petitioner pleads that he was a busy man and delegated all details to others. This fact does not excuse him, nor palliate his conduct in swearing to the truth of divergent statements of fact. * * *

Nor is it the fact, as petitioner contends, that the only indication of fraud is the gross understatement of income. At least the elements emphasized (in a criminal case) in the following excerpt, quoted by petitioner, were shown either conclusively or presumptively by the evidence:

we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, *destruction of books* or records *concealment of assets* or covering up sources of income, *handling of one's affairs to avoid making the records* usual in transactions of the kind, *and any conduct, the likely effect of which would be to mislead or to conceal.* [Mr. Justice Jackson in *Spies* v. *United States*, 317 U. S. 492, 499. Emphasis added.]

Petitioner would have us consider the 2 years separately and find no fraud for 1942 even though we reach the opposite conclusion as to the succeeding year. Either the legal or the practical aspects of such an approach render it an impossibility. Repeated gross understatements of income without an adequate explanation, even over a period of a few years, are evidence of fraudulent intent. See *David J. Pleason*, 22 T. C. 361; *Arlette Coat Co.*, 14 T. C. 751; cf. *L. Glenn Switzer*, 20 T. C. 759 (on appeal C. A. 9). And here the 2 years have numerous additional similarities. The understatement of gross income was as great, and in fact greater, for 1942. The excuse given is as inadequate. Petitioner was an experienced and capable businesswoman no less in 1942 than in 1943. The unsatisfactory explanation for the disappearance of petitioner's books is as applicable to the one year as to the other. The false statements were made to the revenue agents in an examination covering both years. Petitioner's testimony and conduct on the stand, and that of her principal witness, were equally damaging as to each year. And the unorthodox siphoning off of proceeds of the business by payments for the benefit of her two associates occurred more flagrantly in 1942 before there was any partnership than in 1943.

The fraud penalties are accordingly sustained, and the statute of limitations may not be interposed as a defense. Sec. 276 (a), I. R. C.

## V.

Respondent determined deficiencies under the Current Tax Payment Act for both 1942 and 1943. The 1942 determination must be

sustained for the reasons just stated since additions to the tax for that year are applicable by reason of fraud.[7]

Presumably to safeguard the revenue, respondent also took the inconsistent position that the tax for 1943 should be computed by including therein a part of the tax for 1942 under the Current Tax Payment Act. Since we have sustained respondent's position as to the year 1942, and since the alternative position is not pressed, we regard it as having been abandoned. To the extent that the deficiency for 1943 is based on any part of petitioner's 1942 income, it must be disapproved.

*Decision will be entered under Rule 50.*

---

[7] Section 6 (a) of the Current Tax Payment Act of 1943 provides in part that "This subsection shall not apply in any case in which the taxpayer is convicted of any criminal offense with respect to the tax for the taxable year 1942 or in which additions to the tax for such taxable year are applicable by reason of fraud."

