Andrew Flori v. Commissioner.
Flori v. Commissioner
Docket No. 49491.
United States Tax Court
T.C. Memo 1955-108; 1955 Tax Ct. Memo LEXIS 227; 14 T.C.M. (CCH) 366; T.C.M. (RIA) 55108; April 29, 1955
*227 1. Held, that petitioner failed to file an income tax return for the taxable year 1941 and is subject to delinquency penalties under section 291(a), I.R.C., 1939. 2. From 1941 until mid-1947, petitioner was a partner in a tavern business. He maintained two sets of books for the business, one for tax purposes and the other for partnership purposes. The state sales tax returns filed for some of the years in issue reported gross sales in excess of that reported in the partnership income tax returns for the same years. There were also gross understatements of petitioner's income from the partnership in each of his individual returns filed for 1942 through 1947. Held, that respondent has established by clear and convincing evidence that there were deficiencies in tax for each of the years 1941 through 1947 due in part to fraud with intent to evade tax. 3. In September 1947, petitioner became the sole proprietor of the tavern business which he operated through 1949. Held, that respondent has not met his burden of proving that any part of the deficiencies for the tax years 1948 and 1949 were due to fraud with intent to evade tax. Held, further, that the determinations of deficiencies *228 by respondent for the years 1948 and 1949 are presumed to be correct, and that petitioner has failed to meet the burden of proving that such determinations were erroneous. George E. O'Malley, Esq., Royal Union Building, Des Moines, Ia., for the petitioner. John F. Walsh, Esq., for the respondent. FISHER
Respondent determined the following deficiencies in income tax and penalties for the years 1941 through 1949: Delin
quency
Fraud
Year
Deficiency
Penalty
Penalty
1941
$ 111.43
$27.86
$ 55.72
1942
718.94
0
359.47
1943
1,717.48
0
896.08
1944
2,119.75
0
1,198.38
1945
2,585.94
0
1,377.18
1946
993.57
0
496.79
1947
683.89
0
379.95
1948
671.20
0
409.86
1949
819.39
0
409.70
$10,421.59
$27.86
$5,583.13
*229 The issues involved in the instant case are (1) whether petitioner failed to file a return for 1941, (2) whether there were deficiencies in tax for the years in question, and (3) whether, and if so in what years, some part of the deficiencies were due to fraud with intent to evade tax. Memorandum Findings of Fact and Opinion Some of the facts were stipulated by the parties. Those so stipulated are found accordingly and incorporated herein by this reference. Petitioner is an individual residing in Des Moines, Iowa. During the taxable years 1941 to 1946, inclusive, and that part of the taxable year 1947, commencing January 1, 1947, and ending June 2, 1947, he was a5 equal partner with one Joe Music in the operation of a partnership doing business under the name of Andy's Tavern at 413 East 6th Street, Des Moines, Iowa. During that part of the taxable year 1947, commencing September 20, 1947, and ending December 31, 1947, and the taxable years 1948 to 1949, inclusive, petitioner operated a similar business, individually, under the same name, at 415 East 6th Street, Des Moines, Iowa. Petitioner's individual income tax returns for the taxable years 1942 to 1949, inclusive, were *230 filed with the collector of internal revenue for the district of Iowa. Petitioner failed to file an income tax return for the taxable year 1941. Partnership returns were filed for the years 1943 through 1947 reporting the operations of Andy's Tavern partnership to June 2, 1947. Andy's Tavern was furnished with a 16 foot bar and seven booths. It was open for business from 7 A.M. to midnight, Monday through Saturday of each week, during the years in question. On sale at the tavern were draught beer, bottled beer, whiskey, cigarettes, cigars, tobacco, pretzels, pop and peanuts. In 1941, the petitioner and his wife and Music and his wife served customers, one couple alternating with the other throughout the day. There was only one other employee, a man who cleaned up on Sunday. In 1944, a part-time bartender was employed to work on Saturdays. In 1945, the bartender worked full time and continued to do so until the dissolution of the partnership. He was reemployed when the petitioner opened his own tavern in 1947. In 1949, the petitioner and his wife worked at the tavern, and he employed full time two bartenders, a waitress and a dishwasher. There was also a janitor who did the cleaning *231 on Sunday. The petitioner maintained the financial records of the business during all the years in question. Music was illiterate except that he was able to read and write figures. The business was operated on a cash basis. Each day a slip was prepared which stated the amount of receipts and the amount of purchases and other disbursements made that day. During the partnership years, Music would prepare the daily sheet one night, Flori the next. Each Sunday the entries on the daily slips were grouped together and petitioner made entries in what he called the regular tavern book, which he kept at his home. Weekly slips, showing the receipts, expenses and drawings for each week, were also prepared. During the existence of the partnership, the partners counted their receipts every Sunday and divided between them the amount of profit they were to take home. Undistributed receipts were kept in a sack at the tavern premises. The partnership returns and income tax returns of the petitioner were prepared, during the partnership years, by employees in the office of the collector of internal revenue. For this purpose, petitioner first listed the figures by month. He then prepared a sheet *232 of paper, which he brought to the collector's office, on which he had listed the total unitemized gross receipts and purchases of the tavern for the year, together with an itemization of overhead expenses. In 1946, agents of the collector of internal revenue asked petitioner for his books for the purpose of auditing his returns for the years 1943 to 1945, inclusive. The agents were given the "regular tavern books." At the conclusion of the audit, which resulted in the determination and payment of deficiencies for those years, the books were returned to petitioner. He received the impression from conversations with the investigating agents that, insofar as the Government was concerned, he might destroy his books, which he proceeded to do. In 1950, the "regular tavern books" for subsequent years were delivered to revenue agents who were auditing petitioner's returns for the years 1947 to 1949. At the conclusion of this audit, deficiencies were determined and paid by the petitioner for the years 1947 and 1948 and a small refund for the year 1949 was claimed. Petitioner then destroyed the books for those years on the basis of his understanding of the statement of the agents who conducted *233 the first audit. Schedule A below sets forth gross receipts, cost of goods sold, and business deductions as reported in original and amended partnership returns covering 1944, 1945, 1946, and the period from January 1 to June 1, inclusive, 1947. It also sets forth like items for the individual proprietorship from June 2 through December 31, 1947, and for 1948 and 1949, as disclosed by petitioner's individual returns for those periods and his amended return for 1949. The column headed "Individual Net Income" sets forth petitioner's business net income as reported in original and amended returns from 1942 to 1949, inclusive. The items in that column to and including June 1, 1947, represent his reported share of partnership net income. Those from June 2, 1947, through 1949 represent net income from his individual proprietorship. SCHEDULE A
Partnership
Partnership
Partnership Cost
Business
Individual
Year
Gross Receipts
of Goods Sold
Deductions
Net Income
1942
$1,316.50
1943
2,402.31
1943 *
2,741.30
1944
$36,190.37
$26,979.33
$ 5,341.76
1,934.64
1944 *
39,294.38
28,977.36
3,755.46
3,280.78
1945
35,749.36
25,207.65
5,496.14
2,526.78
1945 *
38,100.71
26,641.31
5,011.14
3,224.13
1946
36,527.41
22,460.15
6,458.73
3,804.26
To June 1,
1947, inc.
17,336.89
11,353.05
2,789.11 1,597.37
*234 Individual
Individual
Individual Cost
Business
Year
Gross Receipts
of Goods Sold
Deductions
From June
2, 1947
11,991.14
7,691.00
3,752.94 547.20
Total - 1947:
2,144.57
1948
43,260.30
28,186.52
10,834.03
4,239.75
1949
37,307.10
23,794.31
11,056.12
2,456.67
1949 *
37,307.10
23,794.31
11,317.26
2,195.53
Mrs. Alice Ghislain is the former wife of Joe Music. She was living with him during the existence of the partnership. In 1951, after her divorce from Music, she brought a bagful of papers to the respondent's office in Des Moines. Included in these papers were over two hundred slips and two schedules, all in petitioner's handwriting. Each slip had been brought home by Music from the tavern on a Sunday during the course of the partnership. Such slips had been bundled together by Music and stored in a drawer in his buffet. On one occasion in 1945 or 1946, Music burned some of them. Each slip contained information concerning the operations of the tavern for a weekly period including receipts, purchases, other costs, the *235 cash balance at the beginning and end of the week, and the amount of cash divided between the partners as drawings. The following schedule contains the total amount of certain items for each year as disclosed by the weekly slips. The amounts listed reflect only that portion of each year's operations for which weekly slips were available. SCHEDULE B
Total Amounts Disclosed on Weekly Slips
Number of
Drawings
Year
Weekly Slips
Receipts
Purchases
Other Costs
by Partners
1941
17
$ 6,559.27
$ 3,692.29
$ 168.50
$ 1,976.47
1942
33
18,417.74
10,573.48
1,736.88
7,111.14
1943
48
36,587.16
19,424.00
2,878.69
13,857.03
1944
48
46,355.10
22,275.08
4,707.48
19,606.00
1945
10
10,329.80
5,240.92
1,727.36
3,600.00
1946
25
22,955.25
11,352.10
2,928.07
8,941.00
1947
16
13,944.05
7,533.80
1,913.89
4,430.00
(To June 2,
22 weeks)
The following schedule contains an annualization (i.e., a projection for a 52-week year (22 weeks for 1947)) of items contained in or derived from Schedule A above: SCHEDULE C
Annualized Amounts Based upon Weekly Slips
One-half of
Partnership
Year
Receipts
Purchases
Other Costs
Net Income
Net Income
1941
$20,063.68
$11,293.88
$ 515.32
$ 8,254.48
$ 4,127.24
1942
29,021.72
16,661.32
2,736.76
9,623.64
4,811.82
1943
39,635.88
21,042.66
3,118.44
15,474.78
7,737.39
1944
50,217.96
24,131.12
5,099.64
20,987.20
10,493.60
1945
53,714.96
27,252.68
8,982.48
17,479.80
8,739.90
1946
47,746.92
23,612.16
6,090.24
18,044.52
9,022.26
1947
19,173.00
10,358.92
2,631.64
6,182.44
3,091.22
(To June 2)
*236 The two schedules produced by Mrs. Ghislain were also taken from the buffet drawer in which Music placed the weekly slips and were likewise in petitioner's handwriting. These schedules disclosed the following amounts of total receipts, purchases, and drawings distributed to each partner during each of the years indicated. SCHEDULE D
Annual Schedules
Drawing
by Each
Year
Receipts
Purchases
Partner
1942
$27,501.95
(Undisclosed)
$ 5,225.66
1943
40,175.40
$21,407.98
7,691.18
1944
52,054.60
24,063.47
10,523.00
There was a sales tax in the State of Iowa during the years in question. Sales tax returns were filed quarterly and the taxpayer's records were subject to audit for five years subsequent to the year returns were filed. The tavern's books were never audited for this purpose. The petitioner was required to report his total gross sales in his sales tax returns and to deduct gross sales of beer and cigarettes (upon which the state tax had already been paid) in arriving at the net figure of sales subject to tax. Petitioner did not report his whiskey sales in gross sales returned for sales tax purposes until 1947 and thereafter. *237 Sales tax returns filed for the business for the years indicated below reported the following information: Beer and
Year
Gross Sales
Cigarette Sales
Taxable Sales
1944
$39,062.98
$36,598.13
$2,399.87
1945
37,655.18
34,854.02
2,801.16
1946
34,978.75
32,358.16
2,620.59
1947 (to June 2)
17,209.04
16,314.42
895.76
1949
24,749.31
20,962.99
3,786.35
Petitioner's original income tax return for 1948 was filed on January 17, 1949. On February 21, 1952, petitioner and respondent executed a consent agreement (Form 872) in which they agreed that income taxes for 1948 might be assessed at any time on or before June 30, 1953. Petitioner's original income tax return for 1949 was filed on January 16, 1950. The amended return for that year was filed April 12, 1950. The notice of deficiency involved herein was mailed to petitioner on April 16, 1953. There is a deficiency in petitioner's income tax for each of the taxable years 1941 through 1949. Part of such deficiency for each of the taxable years 1941 through 1947 is due to fraud with intent to evade tax. Opinion FISHER, Judge: Petitioner, a tavern keeper, contests respondent's determinations *238 of deficiencies in his income tax for the years 1941 through 1949 and his determinations that part of each deficiency was due to fraud with intent to evade the tax. He also contests the determination that he failed to file a return for 1941. For convenience of discussion, we shall consider the latter issue first. 1. Failure to file a return. Respondent determined that petitioner is liable for a delinquency penalty of 25% for failure to file a return for 1941 pursuant to section 291(a) of the Internal Revenue Code of 1939. That section provides for this penalty in the case of any failure to make and file a required return unless it is shown that such failure is due to reasonable cause and not to willful neglect. Petitioner testified that he did file a return for 1941, the year in question. He produced no corroborating evidence or records. Respondent produced evidence to the effect that examination of the records of the office of the district director disclosed no record of the filing of a return by petitioner for 1941. Our observation of petitioner while on the witness stand, and our analysis of the evidence in the entire case, convinces us that petitioner is unworthy of belief, *239 and upon consideration of all of the evidence, we hold that he did not file a return for 1941. In view of our finding, the burden rests upon petitioner to establish reasonable cause for the failure to file a return if he is to avoid the delinquency penalty provided in section 291(a). Joseph V. Moriarty, 18 T.C. 327, affd. 208 Fed. (2d) 43. The record discloses no reason for the failure, and petitioner relies solely upon his statement that he did file the return. We, therefore, sustain respondent's determination in this respect. 2. Deficiencies and fraud penalties - 1941 through 1947. Since respondent has asserted fraud penalties, the burden of proof is upon him to establish by clear and convincing evidence that petitioner has been guilty of fraud with intent to evade the tax. Section 1112, Internal Revenue Code of 1939. For the reasons set out below, we believe that he has met that burden. Petitioner operated a tavern in partnership with Joe Music from some time in 1941 until mid-1947. Music was illiterate except to the extent that he could read and write numerals and petitioner did all of the bookkeeping for the business. It is clear from the record *240 that petitioner maintained two sets of books during this period; the "regular tavern books" which he produced for the internal revenue personnel who audited them for tax purposes in 1946 and again in 1950, and other records consisting in part of weekly slips which summarized one week's business activities, and annual schedules which summarized one year's activities, month by month. Some of these weekly slips and annual schedules were given to Joe Music who stored them at his home. On at least one occasion, Music burned some of these records. Over 200 weekly slips and two annual schedules given to Music were submitted in evidence at the hearing herein. We have set out in Schedules B and D of our findings of fact much of the information disclosed by these records. Since the weekly slips are incomplete for each year, in Schedule C we have annualized the information disclosed in Schedule B for a lesser number of weeks, except in 1947 where we applied the same principle to the 22 weeks through June 1, when the partnership terminated. In the absence of complete information, Schedule C affords a general reflection of the partnership figures, and while we do not take it to be accurate or *241 in itself conclusive, it is of some assistance in our analysis in the light of the entire record. Schedule D of our findings was derived from information contained in the several annual schedules given to Music. A comparison of petitioner's reported net income from the partnership (Schedule A of our findings of fact) with both the annualized net income set out in Schedule C, and the annual drawings by each partner set out in Schedule D, is sufficient to disclose that net income was greatly understated by petitioner in his return for each year. It is our view that the maintenance of a second set of records which reveals greater income than that reported by a taxpayer is persuasive evidence of a deficiency in tax of which part, at least, is due to fraud with intent to evade income taxes. Since it was clearly established that the weekly slips and annual schedules were in petitioner's handwriting, we think that petitioner's refusal either to affirm or deny his authorship of the documents upon being confronted with them at the hearing in the instant case is a strong indication of guilty knowledge of their contents. Cf. William Wiener, 12 T.C. 701. It should also be noted *242 that for 1944 and 1945 petitioner reported gross sales of about $39,000 and $37,000, respectively, in his Iowa State sales tax returns. These amounts did not include gross sales of whiskey. Petitioner asserts, however, that whiskey sales were included in gross receipts reported in his original income tax returns for those years. The latter returns reported gross receipts of about $36,000 and $35,000, respectively, which are less than the amounts reported in those years for sales tax purposes. These unexplained discrepancies further support our view that there were fraudulent understatements of income in the instant case. Finally, after due consideration of the fact that Schedule C is not to be taken as an accurate determination, we think it is demonstrated in a broad sense by a comparison of Schedules A and C of our findings that there was a gross understatement of income in the return filed by petitioner for each of the years 1942 through 1947. These repeated understatements are further evidence of a consistent fraudulent intent in those years and in 1941 as well. See Rogers v. Commissioner (C.A. 6, 1940), 111 Fed. (2d) 987, affirming 38 B.T.A. 16 and *243 Lillian Kilpatrick, 22 T.C. 446, on appeal (C.A. 5), and cases cited therein at 458. We add that Schedule B of itself demonstrates taxable net income for the year 1941 for which we have held no return was filed. For the above reasons, we have found that respondent has proved by clear and convincing evidence that there is a deficiency in tax for each of the years 1941 through 1947 due in part to petitioner's fraud with intent to evade the tax. Accordingly, since respondent has discharged his burden of proof for these years, the burden rests upon petitioner to overcome the presumptive correctness of respondent's determination of the amount of the deficiency for each of said years. [1] See Bryan v. Commissioner (C.A. 5, 1954), 209 Fed. (2d) 822, affirming a Memorandum Opinion of this Court [10 TCM 987,], wherein the Court stated (p. 825): "Thus in any case where a deficiency in tax is determined by the Commissioner * * * and the civil fraud penalty is asserted, the burden is upon the Commissioner, in an appropriate proceeding where the validity of an assessment based upon such determination is contested, to establish by clear and convincing proof *244 the existence of fraud. This, however, does not shift the burden of overcoming the presumptive correctness of the Commissioner's determination of deficiency from the taxpayer. When the Commissioner establishes that the returns were fraudulent and were filed with intent to evade tax, he has discharged the burden of proof imposed upon him by Section 1112, supra, * * * Thereafter, if the taxpayer is to escape the deficiency and the imposition of the civil fraud penalty, he must go forward with the proof and show that the determination of deficiency is erroneous. * * *" We hold that petitioner has failed to meet the burden of proving that the deficiencies in tax determined by respondent were erroneous in whole or in part for the years 1941 to 1947, inclusive, and we therefore sustain the respondent as to such determinations. Since we have found fraudulent understatements in each of said years, penalties will be *245 calculated accordingly. 3. Deficiencies and fraud penalties - 1948 and 1949. During these years petitioner was the sole proprietor of Andy's Tavern which he had opened in September 1947. As for the earlier years, insofar as fraud penalties are concerned, respondent has the burden of proving by clear and convincing evidence that there were deficiencies due in part to petitioner's fraud with intent to evade income taxes. It is our view, however, that he has not met this burden for these years. There is no evidence that petitioner maintained more than one set of books or records during 1948 and 1949. Although he had destroyed his records for these years, it was not until after his returns for those years had been audited by internal revenue personnel. This audit disclosed a deficiency due for 1948 (the amount is undisclosed by the record herein and respondent does not contend it was due to fraud) and a small refund due petitioner for 1949. Moreover, other than a complicated calculation based upon stipulated purchases in those years as marked-up for resale pursuant to percentages of mark-up based on 1944 calculations, there is no evidence that petitioner realized income greater than *246 he reported in his original or amended returns for the years here in question. We hold that such evidence is not sufficiently clear and convincing to warrant our holding that petitioner fraudulently understated his income with intent to evade income taxes for those years. In this respect, it should be noted that petitioner's sales tax return for 1949 (that for 1948 was not disclosed in the record) reported gross sales including whiskey of over $24,000, and that both the original and amended income tax returns for that year reported gross receipts of over $37,000. Although these facts may attack petitioner's credibility since he apparently understated his sales for sales tax purposes, they are not clear and convincing evidence that he fraudulently understated his receipts for income tax purposes. It is thus our view that evidence analogous to that which constituted proof of fraud for years prior to 1948 is entirely absent for the years here in question, and that the record lacks other clear and convincing evidence of fraud for such years. We therefore do not sustain the fraud penalties for 1948 and 1949. We turn now to a consideration of the deficiencies determined by respondent *247 for those years. Although respondent has not sustained his burden of proof on the fraud issue for 1948 and 1949, his determination of deficiencies for each of those years is presumed to be correct. Cf. Bryan v. Commissioner, supra.In Cutcliffe v. Commissioner (C.A. 5, 1947), 163 Fed. (2d) 891, affirming on this point a Memorandum Opinion of this Court [5 TCM 673,], the court stated p. 892): "The Commissioner assessed for each year a much larger income and imposed fraud penalties. The Tax Court held that the Commissioner had not sustained his burden of showing fraud, and that no part of the deficiencies in question were due to fraud with intent to evade tax; but that Cutcliffe had not satisfactorily overcome the presumption of correctness of the Commissioner's determination of deficiencies." It is our view in the instant case that petitioner has not overcome the presumption of correctness which attaches to respondent's determinations and we therefore sustain respondent's determinations of deficiencies in tax (but without penalties) for the years 1948 and 1949. During the course of the hearing herein, respondent offered in evidence certain *248 calendars purporting to have written thereon the weekly distributed income of Joe Music during some of the years in issue. The calendars were conditionally received subject to further consideration and argument in the briefs. We hold that the documents in question are not admissible in evidence in the instant case, and we have disregarded them completely in reaching our conclusions herein. Decision will be entered under Rule 50. Footnotes
*. As reported in amended return per audit.↩
*. As reported in amended return per audit.↩
1. It should be noted that respondent's determinations of deficiencies for these years are based upon determinations of petitioner's net income from the business which vary little from the amounts set out in Schedule C which represents an annualization of available data.↩