H. C. Hines v. Commissioner.
Hines v. Commissioner
Docket No. 20415.
United States Tax Court
T.C. Memo 1955-256; 1955 Tax Ct. Memo LEXIS 81; 14 T.C.M. (CCH) 1021; T.C.M. (RIA) 55256; September 16, 1955
*81 There was no appearance and no evidence presented on behalf of petitioner. No issue was raised with respect to the statute of limitations. Held: 1. Petitioner has failed to meet the burden of proof with respect to deficiencies determined by respondent. 2. Respondent has sustained his burden of proof with respect to increased deficiencies alleged in his Amended Answer. 3. The deficiency in each of the two years involved was due in part to fraud with intent to evade income taxes. J. Elton Mitchiner, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax and additions to tax under section 293(b), Internal Revenue Code of 1939, as follows: 50% Fraud
Year
Tax
Deficiency
Penalty
1942
Income
$ 28,121.15
$ 14,060.58
1943
Income & Victory
294,786.96
147,393.48
Totals
$322,908.11
$161,454.06
*82 In conformity with Section 272(e), Internal Revenue Code of 1939, respondent filed an amended answer at the hearing claiming increased deficiencies and fraud penalties as follows: 50% Fraud
Year
Tax
Deficiency
Penalty
1942
Income
$ 5,800.22
$ 2,900.11
1943
Income & Victory
330,826.63
165,413.32
Totals
$336,626.85
$168,313.43
There was no appearance for petitioner at the trial, and no evidence was introduced on his behalf. The issues involved (1) are whether and to what extent deficiencies in tax are due from petitioner for the taxable years ending December 31, 1942, and December 31, 1943, and (2) whether part of any such deficiency for each of said years was due to fraud with intent to evade income taxes. Findings of Fact Petitioner filed his income tax returns for the calendar years 1942 and 1943 with the then collector of internal revenue for the district of Tennessee. During the taxable years 1942 and 1943, petitioner resided at R.F.D. 4, St. Elmo, Tennessee, which is in the immediate vicinity of Chattanooga, Tennessee. Petitioner indicated his occupation as that of a tourist court proprietor in his income tax return for 1942, *83 and a salesman in his 1943 return. During the years in question, however, he also operated several retail and wholesale liquor establishments in Chattanooga, Tennessee, known and licensed as All Brands Liquor Store, Bottle House Liquor Store, and Broadway Liquor Store. In addition to these liquor stores, petitioner owned and operated the Curb Market Grill, the Rock Castle Tourist Court, and a filling station at St. Elmo, Tennessee, which was also a retail liquor outlet during the years 1942 and 1943. The Bottle House Liquor Store, Broadway Liquor Store and Rock Castle Tourist Court were retail establishments, whereas All Brands Liquor Store was both a retail and wholesale liquor enterprise. Chattanooga, Tennessee, was the only "wet" territory within a radius of 100 miles. Petitioner made shipments of alcoholic beverages by the case from his liquor stores to customers in Mississippi, Alabama, Georgia and the Carolinas. He profited greatly during the years involved as a consequence of both the favorable location of his liquor stores and the unusually large demand for alcoholic beverages. During the years herein involved petitioner engaged in extensive "black market" liquor traffic. *84 On November 12, 1945, in the case of the United States v. H. C. Hines, et al., petitioner pleaded guilty to an indictment charging him with (1) conspiring to violate the Emergency Price Control Act of 1942, as amended, and (2) selling distilled spirits during the years 1942 and 1943 at prices in excess of ceiling prices theretofore established, in violation of Title 18, Section 88, U.S.C., and the Emergency Price Control Act of 1942, and was fined a total of $14,200. During the investigation, the revenue agent requested petitioner's books and records, but, assuming any existed, petitioner did not make them available or furnish any information or data on the basis of which his income might have been correctly computed. Upon encountering the above situation, petitioner's income was reconstructed from data disclosed as a result of investigation. Gross sales were computed in the amount of gross purchases plus a percentage mark-up where precise information was unavailable. Petitioner's liquor purchases were determined from records of distributors with whom petitioner had dealt. Approximately 85 per cent of such purchases had been made from Mayer Wholesale Liquor Store. Numerous sales *85 by petitioner during 1943 were traced to his various customers, thereby establishing the selling prices per case of some 40 or 50 different brands of distilled spirits. During this period the maximum wholesale and retail sales prices allowed by O.P.A. over costs were 33 1/3 per cent mark-up on whisky, 40 per cent on gin and rum, and about 60 per cent on wines. Petitioner's sale prices on these items ranged, nevertheless, as high as 80 per cent mark-up over cost. In his return for 1942, petitioner claimed a loss in the amount of $20,082.82 from the operation of the Rock Castletourist Court, and reported a profit from liquor sales made at this location in the amount of $1,961.26. Thus, in his final computation, petitioner reported a net loss in the amount of $18,301.08 for the year 1942. Petitioner failed to include any income from his operation of the All Brands Liquor Store from November 25, 1942, to December 31, 1942, or any income from the operation of the Bottle House Liquor Store during the year 1942. The income tax returns filed by petitioner for both 1942 and 1943 failed to disclose gross sales or gross income from any of the three liquor establishments involved herein, and *86 there were no schedules attached to said returns disclosing the methods of reporting the net income derived therefrom. In reconstructing petitioner's net income for the tax year 1942, respondent determined the cost of goods sold, and used a mark-up of 25 per cent to establish the gross receipts derived by the petitioner. During 1942, petitioner's gross receipts from liquor sales were in the total amount of $154,604.34, from which he derived a net income in the amount of $64,021.29. In his tax return for 1943, petitioner claimed a net loss in the amount of $3,804.79 from the operation of the Rock Castle Tourist Court and the Curb Market Grill and a net operating loss carry-over from 1942 in the amount of $17,226.13, when in fact there was no loss in that year. Without designating the source, he also reported the sum of $9,765 as "Other Income" and the sum of $42,773 as income from All Brands Liquor Store and Bottle House Liquor Store, two liquor establishments in which he claimed an interest only as a partner, although he was in fact the sole proprietor, and the net income from said establishments was greatly in excess of $42,773 for said year. He failed, however, to report any *87 income from the Broadway Liquor Store which he also operated during this same period. For the taxable year 1943, respondent established petitioner's selling prices, which were far in excess of the O.P.A. maximum selling prices, on approximately 40 or 50 brands of alcoholic beverages from the latter's customers' checks and records to determine the gross receipts derived therefrom. The balance of the gross receipts from sales to customers who could not be located was determined by computing the cost of the goods plus a 33 1/3 per cent mark-up, the maximum mark-up allowable under O.P.A. regulations during 1943. The reconstruction of petitioner's income for the year 1943 disclosed that petitioner's gross receipts from liquor sales amounted to $2,366,360.97, from which he derived a net income of $674,472.11. The statutory notice of deficiency was issued by respondent on June 21, 1948. A deficiency in tax is due from petitioner for each of the years involved herein. A part of each such deficiency is due to fraud with intent to evade income taxes. Opinion FISHER, Judge: Petitioner failed to produce any books or records reflecting his income from his liquor establishments and other *88 business ventures for the years in question and refused to cooperate in any way in the reconstruction of his net income. Respondent determined petitioner's net income by ascertaining from suppliers and customers, to the extent possible, the cost and selling price of merchandise. To the extent that such data could not be ascertained, the determination was made on the net profit percentage method as set forth in our Findings. The mark-ups applied in the use of this method appear to have been conservative. It is clear, under the circumstances, that respondent was justified in so doing. See Melvin E. Tunningley, 22 T.C. 1108, 1117. The defense of limitations was not raised, but in view of our determination of fraud, infra, such defense would not have been availing in any event. The respondent's original determination of deficiencies is, of course, prima facie correct and must be upheld since petitioner offered no evidence in support of his burden of proof to the contrary. It should be added, however, that respondent produced affirmative evidence not only establishing the deficiencies determined in his statutory notice, but also, as set forth in our Findings, the substantial *89 additional deficiencies asserted in his Amended Answer. There was, in reality, no area of controversy or dispute other than the possible question of whether or not petitioner was sole proprietor, entitled to all of the income of All Brands Liquor Store and Bottle House Liquor Store for 1943 (which we have found as a fact) or merely a partner entitled only to his share as such. In a "rider" attached to his 1943 income tax return, petitioner reported the amount of $35,806.39 as his share of a total alleged partnership income of All Brands Liquor Store of $87,297.28. In the same "rider," he reported $6,967.26 as his one-half share of the alleged partnership income of Bottle House Liquor Store. There is no affirmative evidence in the record that these establishments were partnerships or that partnership returns were ever filed. On the other hand, respondent produced in evidence Forms 11 (Special Tax Returns required to be filed for said businesses) covering the periods from July 1, 1942, to June 30, 1944, for both All Brands Liquor Store and Bottle House Liquor Store, each signed by petitioner designating himself as individual or owner. There is also in evidence Form 758 (Return of Floor *90 Stocks Tax on Distilled Spirits, etc.) covering the All Brands Store which was signed by petitioner designating himself as owner. Such designation is a material part of each such return form which requires that the signer "State whether individual owner, member of firm, or if officer of corporation, give title." In the light of the foregoing, and in the absence of evidence to the contrary, we must hold that petitioner was the owner of said businesses during the period in question on the basis of his own designation of himself as such. In view of the foregoing, it is unnecessary for us to consider respondent's request that we take judicial notice of the facts found by us in Elizabeth Mayer, T.C. Memorandum 1954-14, dated April 20, 1954 [13 TCM 391], in which we held that the petitioner in that case was not a partner of Hines. We hold for the respondent, therefore, with respect to the deficiencies asserted in the Amended Answer in addition to those determined in the statutory notice itself. As to the fraud issue, the burden was on respondent to establish by clear and convincing evidence that some part of the deficiency for each year in question was due to fraud with *91 intent to evade tax. Section 1112, Internal Revenue Code of 1939. It is evident from our Findings of Fact that he has met this burden. The undisputed evidence shows that for the years 1942 and 1943 petitioner's income tax returns were incorrect and that his net income was grossly understated to such an extent and in respect of items of such character and magnitude as to compel the conclusion that the falsity was known and deliberate. See Frank A. Weinstein, 33 B.T.A. 105, 108. Upon the record as a whole, the failure to report such large amounts on his income tax returns cannot be regarded as having been due merely to gross neglect, but must be deemed to have been motivated by a fraudulent intent to evade taxes. See Goe v. Commissioner 198 Fed. (2d) 851, 853 (C.A. 3), certiorari denied 344 U.S. 897. This is the more obvious in the instant case where petitioner produced no books and records, and failed to cooperate with the revenue agent during the investigation. See Louis Halle, 7 T.C. 245, 250, affd. 175 Fed. (2d) 500 (C.A. 2), certiorari denied 338 U.S. 949. Upon the entire record, therefore, we hold *92 that respondent has met his burden of proving that there were deficiencies for each year in question due at least in part to fraud with intent to evade tax, and the fraud penalties are accordingly sustained. In view of petitioner's fraud, the benefits of Section 6 of the Current Tax Payment Act of 1943 are not applicable to the 1942 deficiency. Lillian Kilpatrick, 22 T.C. 446 (on appeal, C.A. 5). Decision will be entered under Rule 50.