Irving Baum v. Commissioner. Irving Baum and Helen Baum v. Commissioner.
Baum v. Commissioner
Docket Nos. 44869, 44892.
United States Tax Court
T.C. Memo 1958-96; 1958 Tax Ct. Memo LEXIS 135; 17 T.C.M. (CCH) 490; T.C.M. (RIA) 58096; May 26, 1958
Herbert L. Zuckerman, Esq., and David Zuckerman, C.P.A., 60 Park Place, Newark, N.J., for the petitioners. Henry L. Glenn, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: In these consolidated proceedings respondent determined the following deficiencies in income tax and additions to tax: Additions to tax
Sec.
Sec.
Year
Deficiency
293(b)
294(d)(2)
1942
$ 7,264.47
$ 3,632.24
1943
* 12,624.45
6,242.20
1944
10,853.87
5,426.94
1945
8,098.71
4,074.36
$ 502.80
1946
$ 8,232.07
$ 4,181.88
$ 527.36
1947
5,659.96
2,829.98
336.49
1948
13,342.22
6,671.11
802.93
1949
13,534.96
6,767.48
823.62
1950
40,839.10
20,419.55
2,536.62
1951
278.80
139.40
*136 The issues presented are (1) whether deficiencies determined for each year 1942 through 1948 are barred by the statute of limitations, (2) if not, whether petitioners understated their income for the years 1942 through 1948, (3) whether petitioners understated their income in any event for the years 1949 through 1951, (4) whether petitioners committed fraud with intent to evade tax and (5) whether petitioners substantially underestimated their estimated tax for certain years. Findings of Fact Certain facts have been stipulated and are hereby found. Petitioner Irving Baum engaged on his own behalf in the business of gambling from 1942 through 1951 in Passaic County, New Jersey. Petitioner Helen Baum, a housewife, engaged in no business of any kind, owned no property, and received no income from 1942 through 1951. She is here only because she joined with her husband in joint returns for 1948 through 1951. Irving Baum, hereafter referred to as petitioner, filed cash basis income tax returns bearing his name in each year 1942 through 1947 with the collector of internal revenue at Newark, New Jersey. He and his wife, Helen, filed cash basis income *137 tax returns for each year 1948 through 1951 with the same collector. Respondent destroyed the original returns for 1942, 1943 and 1944 in the ordinary course of business. From 1942 through 1951, petitioner maintained no books of account nor records of income-producing activities other than bank deposit statements and checkbook stubs showing deposits in and withdrawals from various bank accounts, and statements of brokers reflecting dealings in securities. Changes in petitioner's net worth in each year 1945 through 1951, without considering any cash on hand, and after adjusting for nondeductible capital losses and nontaxable capital gains and additional capital losses not deducted by petitioner, his nondeductible expenditures for those years, and gross income as reported in returns filed for those years are as follows: Increase in
Nondeductible
Gross
Year
Net Worth
Expenditures
Total
Income Reported
1945
$12,922.02
$ 7,451.75
$20,373.77
$ 6,775.00
1946
15,937.27
9,420.74
25,358.01
8,845.59
1947
9,339.24
9,020.26
18,359.50
6,572.00
1948
31,548.73
10,303.68
41,852.41
8,510.46
1949
34,020.25
11,353.96
45,374.21
9,660.00
1950
80,664.63
13,599.84
94,264.47
16,726.21
1951
* (76,936.08)
13,327.02
* (63,609.06)
13,863.03
*138 In addition he made gifts to his brother of $5,000 in 1946 and $13,000 in 1947. Petitioner had cash on hand at December 31, 1951 as shown by the following schedule: On hand 1/1/51
* $ 2,000.00
Available from conversion of assets: Cash in bank
$12,122.59
Due from Herzfeld & Stern
16,561.59
Stocks
34,117.45
Mortgages receivable
156.50
62,958.13
Adjusted gross income reported
13,863.03
50% of net long-term capital gains
1,463.24
Loan from Garfield Trust Co.
15,000.00
Total increments to available cash
$95,284.40
Reductions due to acquisition of assets: Hillman Minx
$ 1,999.50
Investors Syndicate
1,439.20
$ 3,438.70
Stipulated nondeductible expenditures
13,327.02
Total decreases in available cash
16,765.72
Cash on hand 12/31/51
$78,518.68
Petitioner overstated his gross income for 1951 as shown by the following schedule: Decrease in net worth - exclusive of cash
$76,936.08
Opening cash
$ 2,000.00
Closing cash
78,518.68
76,518.68
Decrease in net worth
$ 417.40
Nondeductible expenditures
13,327.02
Total net worth increase and nondeductible expenditures
$12,909.62
Gross income reported
13,863.03
Overstatement of adjusted gross income
$ 953.41
*139 Petitioner received the following dividends and capital gains which he failed to report in his income tax returns for each respective year: Year
Amount
1945
$2,827.09
1946
3,124.34
1948
216.09
1949
329.39
1950
337.38 He received only taxable interest on United States bonds he owned. He owned no bonds containing tax-free covenants. Petitioner was convicted on a plea of nolo contendere of willful attempt to evade income tax for 1948. Petitioner maintained checking accounts in various banks from August 4, 1927 through June 25, 1938. The accounts reflected nominal deposits, except one account which reflected a deposit of $5,000 in 1933, $3,500 in 1934 and $2,000 in 1935. Petitioner also maintained checking accounts from 1942 through 1951. On July 31, 1940, petitioner's brother and a business associate borrowed $150 from a bank. From May 13, 1932 through May 13, 1941, petitioner rented safe-deposit box No. 882 from a Passaic, New Jersey, bank. He was admitted to this box on only seven occasions between June 1, 1932 and May 31, 1933. Petitioner was delinquent in payment of the $4 annual advance rental in various periods ranging from 3 to 5 years. From May 13, 1941 through *140 1951, petitioner rented safe-deposit box No. 469-L from the same bank. Petitioner paid the $4 annual rental either in advance or during the year for which this box was rented. Petitioner filed no income tax returns from 1916 through 1932 and filed returns from 1933 through 1941 which reported either no tax or only a nominal amount due. Petitioner filed false and fraudulent returns with intent to evade tax in each year 1945 through 1948. Part of each deficiency for 1945 through 1950 was due to fraud with intent to evade tax. Eighty per cent of petitioner's correct income tax liability in each year 1945 through 1950 exceeded the estimated tax paid in those years. Opinion Unless the returns filed for the years 1942 through 1948 were false or fraudulent with intent to evade tax, the statute of limitations bars assessments of any deficiencies. Sections 275(a), 276(a), I.R.C. 1939. Respondent destroyed returns for 1942 through 1944 in the ordinary course of administration. As respondent has the burden of proving fraud, Frank A. Weinstein, 33 B.T.A. 105, he must supply either the allegedly fraudulent returns or adequate evidence of their contents. Alex Rubinstein, *141 29 T.C. - (February 17, 1958) Respondent has done neither here. The assessment lists do not establish the contents of the returns. This situation closely parallels that in Alex Rubinstein, supra, where we held that respondent had not sustained his burden of proving fraud. We perceive no distinction, and indeed the parties so agree. On authority of Alex Rubinstein, supra, we find that respondent has not proved that the returns for 1942 through 1944 were false or fraudulent with intent to evade tax, and that assessments of deficiencies for those years are barred. Respondent based his determinations upon a reconstruction of petitioner's income by the net worth plus nondeductible expenditures method. The parties stipulated all items of net worth at the beginning and end of each year except cash on hand, for which the net worth computation did not allow. The parties also stipulated petitioner's minimum nondeductible personal expenditures in each year. Petitioner's chief contention concerns the failure to allow for cash on hand at the end of each year. For the years 1945 through 1948, for which a statute of limitations issue must also be resolved, petitioner claims to have applied varying *142 amounts of cash from a previously accumulated hoard. The following schedule includes the stipulated net worth increases and nondeductible expenditures in each year, the amount by which those combined items exceed petitioner's reported net income as shown by the returns in evidence, and the amount of cash from his hoard petitioner claims to have expended for the acquisition of assets or for personal expenditures during each year: 1945
1946
1947
1948
Stipulated increases in net worth *
$12,922.02
$15,937.27
$ 9,339.24
$31,548.73
Stipulated nondeductible expenditures
7,451.75
9,420.74
9,020.26
10,303.68
Total
$20,373.77
$25,358.01
$18,359.50
$41,852.41
Income reported
6,775.00
8,845.59
6,572.00
8,510.49
Unreported increase
$13,598.77
$16,512.42
$11,787.50
$33,341.92
Application of cash as enumerated by petitioner
10,000.00
13,000.00
(5,000.00)
28,000.00
Unreported increase - Balance not accounted for
$ 3,598.77
$ 3,512.42
$16,787.50
$ 5,341.92
As can be seen, substantial amounts of unreported income, even after fully accepting petitioner's *143 claimed application of cash, remain in each year. Those amounts bulk large when contrasted to the income reported each year. Petitioner has, in effect, admitted consistent, continuous and substantial understatements of income, in itself strong evidence of fraud. Abraham Galant, 26 T.C. 354, 364; Brodella v. United States, (C.A. 6) 184 Fed. (2d) 823. Considering the repeated understatements, see Arlette Coat Co., 14 T.C. 751, petitioner's illegal business, see Wallace H. Petit, 10 T.C. 1253, his failure to maintain adequate books and records, see Herman J. Romer, 28 T.C. 1228, his admitted and unexplained omissions of dividend and capital gain income in 3 of the 4 years, and the inherent contradictions in his explanations, see Pincus Brecher, 27 B.T.A. 1108, we conclude that on the entire record respondent has proved by clear and convincing evidence that petitioner filed returns for the years 1945 through 1948 which were false and fraudulent with intent to evade tax. Accordingly, the statute of limitations does not bar the deficiencies for any of those years. The statute of limitations being inapplicable, *144 the deficiencies as determined for 1945 through 1948, as well as the later years when the statute has no application, are presumptively correct. Max Cohen, 9 T.C. 1156, affd. (C.A. 10) 176 Fed. (2d) 394. Other than his own testimony, little evidence supports petitioner's burden of proof for any of the years 1945 through 1950. None of the other witnesses could corroborate the existence of the cash hoard claimed by petitioner. In view of his plea to the criminal charge, we wholly disregard petitioner's testimony in its self-serving aspects as unworthy of belief, see Lillian Kilpatrick, 22 T.C. 446, affd. (C.A. 5) 227 Fed. (2d) 240, even though we have accepted it where it constitutes an admission. We approve the deficiencies in tax as determined for each of the years 1945 through 1950 for failure of proof. The situation in 1951, however, requires different treatment. Although respondent's reconstruction attributes to petitioner available cash for 1951 of about $90,000, petitioner had less on hand at the end of the year. As shown by our findings, we have been unable to find that petitioner had cash on hand at December 31, 1951 of *145 more than $78,518.68. The result indicated by the findings is that petitioner overstated, rather than understated, his income. Accordingly, we disapprove the deficiency determined for 1951. Respondent determined additions to tax for fraud for the years 1945 through 1951. The discussion of fraud in connection with the statute of limitations for 1945 through 1948 applies equally to the additions to tax for fraud for those years. For 1949, the total of the stipulated net worth increase and stipulated nondeductible expenditures exceeded petitioner's reported income by $35,714.21. He claimed to have used only $1,500 of his cash hoard to acquire assets and for nondeductible personal expenditures in that year. This again constitutes an admitted gross understatement of income similar to those involving 1945 through 1948. We cannot find admitted understatements that are as great in 1950, but the demonstrated deficiencies for all years not barred and the clearly established pattern of understatements for the 5-year period require that we regard petitioner's conduct in 1950 as part of the same general pattern as for the prior years. See Lillian Kilpatrick, supra, at 458. During *146 this year, as well as the earlier ones, other evidence of fraud persisted including operation of the illegal business, failure to keep proper books and records, and admitted omissions of dividends and capital gains from the returns. On careful consideration of the entire record, as well as these indicia of fraud, we sustain the additions to tax for fraud determined for the years 1945 through 1950. Since there is no deficiency in tax for 1951, no further consideration need be given to additions to tax for fraud for that year. Respondent determined additions to tax under section 294(d)(2) for the years 1945 through 1950. Petitioner offered no evidence whatsoever as to those additions, and for failure of proof we must approve the determination. Decisions will be entered under Rule 50. Footnotes
*. Includes Victory tax.↩
*. Decrease.↩
*. Conceded by respondent.↩
*. After allowing for nontaxable capital gain and nondeductible capital loss.↩